## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL DIVERSITY,
1411 K St. NW, Suite 1300
Washington, D.C. 20005,

        *Plaintiff,*

        v.

U.S. OFFICE OF MANAGEMENT AND
BUDGET,
725 17th Street, NW
Washington, DC 20503

        *Defendants.*

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

Case No: _____

## INTRODUCTION

1.     The Center for Biological Diversity ("Center") brings this action to compel the United States Office of Management and Budget ("OMB") to disclose records under the Freedom of Information Act, 5 U.S.C. § 552, *as amended* ("FOIA").

2.     The records requested consist of a discrete and carefully described set of calendars for senior officials who have served at OMB, including Director Russell Vought, General Counsel Mark Paoletta, and the former Acting Administrator of OMB's sub-agency the Office of Information and Regulatory Affairs ("OIRA"), Jeffery Clark. The Center also requested the calendars of Stuart Levenbach, OMB's former Director of Natural Resources, Energy, Science, and Water, and the calendars of the approximately 45 full-time career servants within OIRA ("OIRA Examiners") who would have reviewed rulemaking or coordinated OMB actions. The Center seeks the records responsive to these five requests in order to track actions by these

officials and their staff to review, delay, revise, and rescind environmental protections. These records could include meetings undertaken to effectuate the major regulatory rollbacks that have taken place within the first year of the Trump Administration. Past administrations have published such calendars of high-level officials proactively, as a matter of course.

3.     On February 6, 2025, Russell Vought ("Vought") was confirmed for a second term as Director of OMB. Five days later, on February 11, 2025, President Donald Trump signed Executive Order 14210, "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative," directing agencies to prepare for large-scale reductions in force ("RIFs"). On February 26, 2025, Vought issued a guidance memorandum instructing agencies to pursue the "maximum elimination [of] functions" and to coordinate with their "Department of Government Efficiency" team leads. Off. of Mgmt. & Budget, Guidance on Agency RIF and Reorganization Plans Requested by *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative* (2025).

4.     Mark Paoletta ("Paoletta") began as General Counsel of OMB on the first day of the Trump Administration. He has since assumed additional roles which appear to include Chief Legal Officer at the Consumer Financial Protection Bureau as well as acting Administrator of OIRA.  In these positions, Paoletta has worked to provide the legal reasoning behind Vought's efforts to dismantle core functions of the government and undermine environmental protections. Release of Paoletta's calendars is urgently needed as the public currently knows very little about his activities and responsibilities.

5.     On March 3, 2025, Jeffrey Clark ("Clark") began serving as "Acting" Administrator of OIRA, an office in OMB that purports to possess authority to unilaterally review, change or even halt any federal agency's regulatory proposals, usually based on the

regulatory costs of such proposals. On November 20, 2025, the Center submitted a request to the Government Accountability Office to investigate whether Clark's continued "acting" service violated the Federal Vacancies Reform Act ("FVRA"). 5 U.S.C. § 3345 *et seq*. Around that same time, OMB announced that Clark's title had been changed to Associate Administrator. On March 4, 2026, Jeffrey Clark stepped down from his position at OIRA. Despite Clark no longer serving at OIRA, the public would benefit from greater understanding of Clark's activities and responsibilities during his period of public service.

6.     Stuart Levenbach ("Levenbach") has served in various staff positions at OMB during the Trump Administration. In the first months of this administration, Levenbach served as the Director of Natural Resources, Energy, Science, and Water and would have been responsible for effectuating the goals of Vought, Clark, and Paoletta to implement staff reductions and undermine environmental protections. Meanwhile, those OIRA Examiners who had relevant subject matter expertise would have been required to calendar meetings, including those involving the review of environmental protections. Since the public has no insight into his activities and responsibilities in this important role, release of his calendars is urgent and necessary.

7.     As high-level political appointees, Vought, Paoletta, Levenbach, and Clark would have taken meetings to effectuate the goals of a large-scale reductions in force, and to implement specific programmatic reductions through collaboration with other agency heads. The calendars of the OIRA Examiners who cover environmental policies would then have reflected the next stage in that implementation process. All five requests should result in records illuminating this environmentally destructive mission.

8.      Calendars and schedules are relatively straightforward requests under FOIA as they do not typically implicate complex redactions under deliberative process or attorney-client privileges. Completing reviews focused on redactions for personal privacy is relatively straightforward compared to other types of review. These records are subject to FOIA and are highly time sensitive, as they relate to the ongoing implementation, review, and recission of environmental and public health protections, many of which are vital to ensure clean air and water, protect wildlife and biodiversity, safeguard our public lands, and protect vulnerable communities.  Disclosure of these records will assist the Center and the public in understanding the decision-making surrounding rollbacks of longstanding environmental protections while illuminating the process of OIRA, an agency with questionable statutory authority that has been working with virtually no public transparency or accountability to Congress or the public.

9.      The Center and its members are deeply interested in, and affected by, how these high-ranking officials and their staff spend their working hours, who they meet with, how they prioritize those meetings, and how they coordinate regulatory and budgetary decisions. These preliminary actions ultimately shape national environmental policy and have definitive consequences on final regulatory outcomes.

10.     Prompt access to these records is necessary to realize FOIA's purpose of transparency in government operations. At present, very little is publicly known about how OIRA conducts its regulatory reviews. FOIA establishes clear deadlines and requirements for FOIA responses. Defendants are in violation of these statutory duties.

11.     Accordingly, the Center seeks (1) declaratory relief establishing that OMB has violated FOIA; and (2) injunctive relief ordering OMB to make an immediate determination on

the Center's FOIA requests and promptly release all requested records and information, including all reasonably segregable portions of any lawfully exempt records, by a date certain.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331 because this action arises under FOIA. Venue vests in this Court under 5 U.S.C. § 552(a)(4)(B), which provides venue for FOIA cases in this district and because the responsive records may be found in this district.

13.     This Court has authority to grant the requested declaratory relief pursuant to 28 U.S.C. § 2201 and 5 U.S.C. § 706; authority to grant the requested injunctive relief pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 2202; and otherwise provide relief using the court's equitable powers.

## PARTIES

14.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("Center") is a nonprofit organization with offices and staff throughout the United States. The Center works through science, law, and policy to maintain and increase protections for air and water; plants, animals, and their native habitats; a livable climate; public lands; and healthy communities. The Center has more than 93,000 active members throughout the United States and the world.

15.     The Center is the requester of the information and records at issue. The organization and its members are harmed by OMB's failure to disclose the requested information and records that are responsive to the Center's FOIA requests. These violations of law injure the Center by precluding the Center from understanding important information about the activities of the officials who are responsible for regulatory review of key federal protections for air and water, wildlife and nature, public lands, the climate, and vulnerable communities.

16. This information and the Center's subsequent analyses of it will help to inform and prioritize the Center's organizational mission, including helping the Center make critical choices about where to direct resources and develop alternate strategies. The Center will also share the requested information with its members and the public in general to keep them informed about coming threats to clean air and water, wildlife and nature protections, public lands, climate, and vulnerable communities and potential avenues for response. The requested records and information will also be used to inform Congressional representatives and their staffs about how regulatory review at OMB may be causing agencies to violate statutorily imposed deadlines.

17. This injury will be redressed if the Court orders OMB to disclose the requested records.

18. Defendant OFFICE OF MANAGEMENT AND BUDGET ("OMB") is the federal agency responsible for overseeing and implementing the federal budget and coordinating work across executive branch agencies. OMB wields immense influence over the development of federal policy, including the review of environmental regulations and other major agency rules. OIRA is a sub-agency that is housed within OMB. OMB is responsible for responding to FOIA requests for records possessed by OIRA. OMB is a federal governmental agency within the meaning of FOIA and is in possession and control of records responsive to the Center's FOIA requests. As such, it is subject to FOIA pursuant to 5 U.S.C. § 552(f) and is responsible for fulfilling the Center's FOIA requests.

## STATUTORY BACKGROUND

19. FOIA's primary purpose is to improve government transparency and accountability by requiring the disclosure of agency records and information. *United States DOJ*

*v. Tax Analysts*, 492 U.S. 136, 142 (1976). It establishes the public's right to access all federal agency records, 5 U.S.C. § 552(a), unless one or more narrow statutory exemptions apply. *Id*. § 552(b).

20.     Recognizing that the timely disclosure of requested records is essential to fulfilling its purpose, FOIA imposes strict and rigorous deadlines for agencies to respond to FOIA requests for specific information. Within 20 business days of receiving a request, an agency must (1) determine if it will release the requested records and (2) notify the requester of (a) its determination and reasons for it, (b) the right to seek assistance from the FOIA Public Liaison, and (c) the right to appeal an adverse determination. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a).

21.     FOIA provides only limited circumstances under which a federal agency may take longer than 20 business days to make a determination. First, the agency may toll the 20 business day deadline for up to ten additional business days while the agency is waiting for information that it has reasonably requested from the requester. 5 U.S.C. § 552(a)(6)(A)(ii)(I). Second, the agency may also toll the 20 business day deadline for up to ten additional business days if it needs to clarify with the requester any issues regarding fee assessment. 5 U.S.C. § 552(a)(6)(A)(ii)(II).

22.     Additionally, if the agency faces "unusual circumstances," the agency may extend the 20 business day deadline if the agency sets "forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i). No extension, however, should exceed ten business days unless the agency provides written notice to the requester explaining the "unusual circumstances" requiring an extension, establishes the date on which the agency expects to make the determination, and

provides the requester with "an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." 5 U.S.C. § 552(a)(6)(B)(ii).

23.     Under FOIA, "unusual circumstances" are defined as "the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request[,]" or "the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request," or "the need for consultations . . . with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein." 5 U.S.C. § 552(a)(6)(B)(iii).

24.     Unless an agency subject to FOIA properly establishes a different timeline for disclosing responsive records, according to the above provisions, FOIA's mandate to make public records "promptly available" to a requester requires federal agencies to provide responsive records to a requester within or shortly after the 20-day deadline set forth in 5 U.S.C. § 552(a)(6)(A)(i).

25.     However, if an agency does not respond to a FOIA request within the statutory time limit and does not provide the requester with appeal rights, the requester may seek remedy for constructive exhaustion. *Thomas v. HHS*, 587 F. Supp. 2d 114, 117-18 (D.D.C. 2008) (finding plaintiff entitled to constructive exhaustion because agency failed to advise plaintiff of appeal rights and agency did not respond to plaintiff's appeal of constructive denial).

26.     Moreover, the D.C. District Court has found that "an unusually long delay might give rise to the inference that the agency forgot about, or sought to ignore, a FOIA requester's request." *Harvey v. Lynch*, 178 F. Supp. 3d 5, 8 (D.D.C.).

27.     Agencies must make a reasonable effort to maintain and search for records, so all responsive records can be identified and reproduced. 5 U.S.C. § 552(a)(3)(B)–(D).

28.     In certain limited instances, an agency may withhold responsive records pursuant to nine specific statutory exemptions. 5 U.S.C. § 552(b). These exemptions must be narrowly construed given FOIA's primary objective of transparency and disclosure of information, not secrecy. An agency bears the burden of proof if it claims any exemption applies to withhold responsive documents. *Id*. §552(a)(4)(B). Even where records may be exempt from disclosure, FOIA expressly requires agencies to disclose reasonably segregable portions of those records. *Id*. § 552(b).

29.     FOIA grants this Court jurisdiction "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

## STATEMENT OF FACTS

## MARCH 21, 2025 REQUESTS CONCERNING CLARK AND VOUGHT

30.     On March 21, 2025, the Center submitted four FOIA requests to OMB requesting various categories of schedules. The first three sought the schedules of three high-ranking officials, namely Russell Vought, the Director of OMB, Stuart Levenbach, then Director of Natural Resources, Energy, Science, and Water at OMB, and Jeffrey Clark, then Acting Administrator of OIRA. The fourth request sought the calendars of the approximately 45 full-time career civil servants working as regulatory examiners at the Office of Information and Regulatory Affairs. OMB acknowledged each of these requests in writing on soon after their dispatch but has not released any records in response to any of the requests. The communications

regarding each request, as well as contextual information about the records that are the subject of the requests, are summarized below.

31.    On February 6, 2025, Vought was confirmed for a second term as the Director of OMB. On March 3, 2025, Jeffrey Clark began to serve underneath Vought as "Acting" Administrator of OIRA. The occupant of that position is typically responsible for carrying out the review, revision, and often the recission of regulations containing important environmental and public health protections.

32.    As senior political appointees of OMB, Vought and Clark necessarily engaged in meetings to effectuate both large-scale RIFs and environmental rollbacks that would be reflected in related scheduling records.

33.    On March 21, 2025, the Center submitted two FOIA request to OMB—one each for records of "the schedules or calendars of" Vought and Clark respectively, "including but not limited to travel and/or meeting schedules" from February 26, 2025 to the date of search.

34.    Both FOIA requests concerned a single straightforward subject, targeted within a specific date range, and focused on individual record custodians. Neither request would have involved a voluminous set of records.

35.    On March 22, OMB acknowledged receipt of both requests, assigning the request for Vought's schedules the tracking number OMB-2025-1111 ("Vought's Schedules") and assigning the request for Clark's schedules the tracking number OMB-2025-1117 ("Clark's Schedules"). OMB did not seek an extension for unusual circumstances and did not categorize the Center's requests as "complex."

36.    After hearing nothing further from OMB, the Center sent the agency an email on April 25, 2025, requesting a status update on the two FOIA requests.

37.     After another month of silence, the Center again requested a status update on the two FOIA requests from OMB on May 28, 2025.

38.     On June 9, 2025, OMB sent an email on the status of "Vought's Schedule" stating that "our best estimate at this time for completing the processing of your FOIA request is 36-48 months." Moments later, the Center received another email on the status of Clark's Schedules, again providing an estimated 36–48-month timeline for completion. OMB referenced a sizeable backlog of other FOIA requests but did not seek an extension for unusual circumstances.

39.     Pursuant to FOIA, OMB was required to make a determination on the Center's initial FOIA request of March 21, 2025 by April 17, 2025. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a).

40.     More than 21 business days have passed without a determination on the requests or the release of any records from OMB, in violation of FOIA. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a). OMB has not notified the Center of any "unusual circumstances" that prevent it from complying with FOIA's deadline for a determination, 5 U.S.C. § 522(a)(6)(B); 5 C.F.R. § 1303.40(c).

41.     On June 12, the Center sent two letters to OMB formally appealing the constructive denial of both the Clark's Schedules and Vought's Schedules requests under FOIA. The Center's letter sought to exhaust its administrative remedies, since OMB had not responded to either FOIA request within the statutory time limit and had failed to provide the Center with appeal rights. *Thomas v. HHS*, 587 F. Supp. 2d 114, 117-18 (D.D.C. 2008).

42.     Over a month later, on July 14, Associate General Counsel Shraddha Upadhyaya at OMB sent letters to the Center stating that she was granting both appeals and agreeing that OMB had failed to respond within twenty working days as required by statute. However, both

letters failed to include any remedies for the agency's acknowledged violation of FOIA, such as instructions to OMB to commit to a prompt release of records or to invoke and justify an extension for unusual circumstances. Instead, these letters merely repeated the references made in OMB's prior emails to the agency's FOIA backlog.

43.    Both letters granting the Center's appeals also stated that "[i]f you consider this to be a denial of your appeal, judicial review of my action on your appeal is available to you in accordance with the provisions of 5 U.S.C. §552(a)(4)." *See* 5 C.F.R. § 1303.70(a).

44.    The Center has received no further updates regarding either request since these appeal determinations on July 14, 2025.

45.    OMB's ongoing failure to communicate constructively with the Center or to make a timely determination and "promptly" provide all responsive records to the Center undermines FOIA's primary purpose of transparency and openness in government.

**MARCH 21, 2025 REQUEST CONCERNING LEVENBACH**

46.    On March 21, 2025, the Center submitted a FOIA request to OMB seeking records of "the schedules or calendars of Stuart Levenbach, Associate Director for Natural Resources, Energy, Science, and Water at OMB, including but not limited to travel and/or meeting schedules." In February 2025, Levenbach took a role at OMB in which he would have reviewed and developed the budgets for agencies including the Department of the Interior, the Environmental Protection Agency, and the National Oceanic and Atmospheric Administration. The request sought records from January 20, 2025, to the date of the search.

47.    On March 22, OMB acknowledged receipt of this request, assigning the request the tracking number OMB-2025-1112 ("Levenbach's Schedules"). The Center has received no further communications from OMB regarding this request.

48.     Pursuant to FOIA, OMB was required to make a determination on the Center's initial FOIA request of March 21, 2025 by April 17, 2025. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a).

49.     More than 21 business days have passed without a determination on the request or the release of any records from OMB, in violation of FOIA. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a). Nor had OMB notified the Center of any "unusual circumstances" that prevent it from complying with FOIA's deadline for a determination, 5 U.S.C. § 522(a)(6)(B); 5 C.F.R. § 1303.40(c).

50.     OMB's ongoing failure to communicate constructively with the Center or to make a timely determination and "promptly" provide all responsive records to the Center undermines FOIA's primary purpose of transparency and openness in government.

### MARCH 21, 2025 REQUEST CONCERNING OIRA EXAMINERS

51.     On March 21, 2025, the Center submitted a FOIA request to OMB seeking records of "the schedules or calendars of all of the approximately 45 full-time career civil servants ("OIRA Examiners"), including but not limited to travel and/or meeting schedules." The request sought records from January 20, 2025, to the date of the search.

52.     On March 22, OMB acknowledged receipt of this request, assigning the request the tracking number OMB-2025-1113 ("OIRA Examiners Schedules"). OMB did not seek an extension for unusual circumstances and did not categorize the Center's request as "Complex."

53.     After hearing nothing further from OMB, the Center sent the agency an email on April 25, 2025, requesting a status update on the FOIA requests.

54.     After nearly another month of silence, the Center again requested a status update on this FOIA request from OMB on May 19, 2025.

55.     On June 9, 2025, OMB sent an email on the status of this request stating that "our best estimate at this time for completing the processing of your FOIA request is 36-48 months." OMB referenced a sizeable backlog of other FOIA requests but did not seek an extension for unusual circumstances.

56.     Pursuant to FOIA, OMB was required to make a determination on the Center's initial FOIA request of March 21, 2025 by April 17, 2025. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a).

57.     More than 21 business days have passed without a determination on this request or the release of any records from OMB, in violation of FOIA. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a). OMB has not notified the Center of any "unusual circumstances" that prevent it from complying with FOIA's deadline for a determination, 5 U.S.C. § 522(a)(6)(B); 5 C.F.R. § 1303.40(c).

58.     On June 13, the Center sent a letter to OMB formally appealing the constructive denial of its OIRA Examiner's Schedules request under FOIA. The Center's letter sought to exhaust its administrative remedies, since OMB had not responded to either FOIA request within the statutory time limit and had failed to provide the Center with appeal rights. *Thomas v. HHS*, 587 F. Supp. 2d 114, 117-18 (D.D.C. 2008).

59.     Over a month later, on July 15, Associate General Counsel Shraddha Upadhyaya at OMB sent a letter to the Center stating that she was granting this appeal and that she agreed that OMB had failed to respond within twenty working days as required by statute. However, the letter failed to include any meaningful remedies and merely stated that "[she had] instructed OMB's FOIA staff to promptly process your FOIA request in the order in which it was received."

60.    This letter also stated that "[i]f you consider this to be a denial of your appeal, judicial review of my action on your appeal is available to you in accordance with the provisions of 5 U.S.C. §552(a)(4)." *See* 5 C.F.R. § 1303.70(a).

61.    On July 16, the Center received an email from "OMB's FOIA Team" requesting that the Center narrow the scope of its request with the justification that "[a]s crafted, your FOIA request is overly broad and processing the calendars and meeting schedules of nearly four dozen individuals would impose a heavy burden on OMB's limited FOIA resources and staff."

62.    On July 18, the Center agreed to narrow the request "to the OIRA Examiners who cover the U.S. Department of the Interior and U.S. Environmental Protection Agency's portfolios." The Center then requested confirmation that "this adequately describes the records."

63.    On September 23, after receiving no reply, the Center repeated its request that OMB "confirm [its] receipt of our July 18, 2025 clarification and provide an update on the status of this request.

64.    On September 30, OMB replied with the statement that "this email is to confirm that OMB received your narrowing proposal of July 18, 2025" and that "there are more than 1,700 FOIA requests ahead of yours in our backlog queue." OMB's response did not specifically address the Center's inquiry into whether its proposal "adequately describes the records," and OMB did not provide an updated estimate on the likely response time despite having dramatically reduced the scope of its request, per OMB's inquiry.

65.    The Center has received no further communications regarding this request.

66.    OMB's failure to make a timely determination and "promptly" provide all responsive records undermines FOIA's primary purpose of transparency and openness in government.

## FEBRUARY 3, 2026 REQUESTS CONCERNING MARK PAOLETTA

67.     On February 3, 2025, the Center submitted a FOIA request to OMB requesting the schedules of Mark Paoletta from November 1, 2025 to the date of search.

68.     OMB acknowledged receipt of this request in writing the next day on February 4, 2026 and assigned it the reference number of OMB-2026-347.

69.     OMB has not released any records in response to the request or provided any communication beyond the initial receipt.

70.     This FOIA requests concerned a single straightforward subject, targeted within a specific date range, and focused on individual record custodians. The request would not have involved a voluminous set of records

71.     Pursuant to FOIA, OMB was required to make a determination on the Center's initial FOIA request of February 3, 2026 by March 4, 2026. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a).

72.     More than 21 business days have passed without a determination on the requests or the release of any records from OMB, in violation of FOIA. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a). Nor has OMB notified the Center of any "unusual circumstances" that prevent it from complying with FOIA's deadline for a determination, 5 U.S.C. § 522(a)(6)(B); 5 C.F.R. § 1303.40(c).

73.     OMB's failure to make a timely determination, communicate with the Center, and "promptly" provide all responsive records undermines FOIA's primary purpose of transparency and openness in government.

## CLAIMS FOR RELIEF

## <u>FIRST CLAIM FOR RELIEF</u>

## OMB has Failed to Comply with FOIA's Mandatory Determination Deadline

74.    The Center re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

75.    The Center properly requested records within the control of OMB through its four requests on March 21, 2025, and its single request on February 3, 2026.

76.    The Center has a statutory right to lawful final determinations from OMB on the Center's March 21, 2025 and February 3, 2026 requests in a manner that complies with FOIA. 5 U.S.C. § 552(a)(6)(A)(i).

77.    In order to make a lawful "determination," OMB must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the "determination" is adverse.

78.     The deadline for OMB to provide a determination on the Center's requests has lapsed because more than 20 working days have passed since OMB received the Center's requests and OMB has not claimed the extension of 10 working days for the requests.

79.    The failure by OMB to provide a lawful determination on the Center's requests by FOIA's mandatory deadline violates the Center's right to a determination.

80.    OMB has no lawful basis under FOIA for its delay and has provided no lawful basis to withhold a determination in response to the Center's requests.

81.    The Center is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

82.     The Center's organizational activities will be adversely affected if OMB is allowed to continue violating FOIA's requirement to provide a determination.

83.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in records requests to OMB in the foreseeable future.

84.     Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, OMB will continue to violate the Center's right to receive a determination in response to the Center's requests for records under FOIA.

## SECOND CLAIM FOR RELIEF

### OMB has Failed to Conduct an Adequate Search for Responsive Records

85.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

86.     The Center has a statutory right to have OMB process the Center's four March 21, 2025 requests and single February 3, 2026 FOIA request in a manner that complies with FOIA. 5 U.S.C. § 552(a)(3).

87.     OMB has violated the Center's rights in this regard because defendants have unlawfully failed to conduct adequate searches reasonably calculated to locate all records responsive to the Center's FOIA requests. *Id.*

88.     OMB has no lawful basis under FOIA for their failure to conduct adequate searches for records responsive to the Center's March 21, 2025 and February 3, 2026 requests.

89.     Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, OMB will continue to violate the Center's rights under FOIA to an adequate search for records responsive to the Center's March 21, 2025 and February 3, 2026 requests.

## THIRD CLAIM FOR RELIEF

**OMB has Failed to Promptly Disclose all Responsive Records**

90.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

91.     The Center has a statutory right to the prompt disclosure of requested records. 5 U.S.C. § 552(a)(3)(A).

92.     OMB has violated the Center's rights in this regard by withholding records that are responsive to the Center's four March 21, 2025 requests and single February 3, 2026 request.

93.     The "unusually long delay" of between 3 to 4 years given by the OMB gives rise to the inference that the agency "sought to ignore" the Center's request. *Harvey v. Lynch*, 178 F. Supp. 3d 5, 8 (D.D.C. 2018).

94.     Further, OMB has provided no lawful basis to withhold the records pursuant to any of FOIA's nine exemptions to mandatory disclosure or to withhold any segregable, nonexempt portion of the records. *See id.* § 552(a)(8)(A), (b)(1)–(9).

95.     Once the head of the agency has made a determination on appeal or the 20-day statutory deadline for the appeal decision has passed, the requester may bring suit in federal district court pursuant to § 552(a)(4)(B).

96.     Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, OMB will continue to violate the Center's right to promptly receive all records responsive to its FOIA requests.

**PRAYER FOR RELIEF**

WHEREFORE, the Center respectfully requests that this Court:

(A) Declare that the Defendant violated FOIA by failing to provide a lawful determination within 20 workings days on the Center's four March 21, 2025 and single February 3,

2026 FOIA requests to OMB, tracking numbers OMB-2025-1111, OMB-2025-1112, OMB-2025-1113, OMB-2025-1117, and OMB-2026-347, failing to conduct an adequate search for records responsive to these requests, and failing to promptly disclose all records responsive to these requests;

(B) Order the Defendant to immediately make a determination on the Center's March 21, 2025 and February 4, 2026 FOIA requests to OMB, tracking numbers OMB-2025-1111, OMB-2025-1112, OMB-2025-1113, OMB-2025-1117, and OMB-2026-347;

(C) Order the Defendant to search for any and all responsive records to the Center's March 21, 2025 and February 4, 2026 FOIA requests, tracking numbers OMB-2025-1111, OMB-2025-1112, OMB-2025-1113, OMB-2025-1117, and OMB-2026-347, using search methods reasonably likely to lead to discovery of all responsive records with the cut-off date for such search being the date the search is conducted;

(D) Order the Defendant to promptly produce, by a date certain, all nonexempt responsive records or segregable portions of the records and a *Vaughn* index of any responsive records or portions of responsive records withheld under a claim of exemption, at no cost to Plaintiff;

(E) Enjoin the Defendants from continuing to withhold any nonexempt responsive records or segregable portions of the records;

(F) Retain jurisdiction of this action to ensure the processing of the Center's FOIA requests and that no agency records or portions of the records are improperly withheld;

(G) Award the Center its attorneys' costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E) or 28 U.S.C. § 2412; and

(H)    Grant such other and further relief as the Court may deem just and proper.


DATED: April 13, 2026

Respectfully submitted,


/s/ *Ivan Ditmars*
Ivan Ditmars (D.C. Bar No. CA00243)
Center for Biological Diversity
2100 Franklin St., Suite 375
Oakland, CA 94612
Tel: (510) 844-7158
Email: iditmars@biologicaldiversity.org

/s/ *John Glass*
John William ("J.W.") Glass
(D.C. Bar No. 1780210)
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
Tel: (202) 849-8401 ext. 102
Email: jwglass@biologicaldiversity.org


*Attorneys for Plaintiff*